**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **GRACE NSIAH,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | CIVIL ACTION NO._____ |
| **ACCENTURE PLC, ACCENTURE LLP,** | § | 1:20 cv00060 |
| **ACCENTURE INC., ACCENTURE LLC,** | § | |
| **ACCENTURE SOLUTIONS PRIVATE** | § | |
| **LTD., ACCENTURE STATE** | § | |
| **HEALTHCARE SERVICES LLC,** | § | |
| **ACCENTURE INSURANCE SERVICES** | § | |
| **LLC, and TEXAS MEDICAID &** | § | |
| **HEALTHCARE PARTNERSHIP,** | § | |
| | § | |
| *Defendants.* | § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:**

GRACE NSIAH, ("Plaintiff" or "Nsiah") complaining of and about ACCENTURE PLC,

ACCENTURE LLP, ACCENTURE INC., ACCENTURE LLC, ACCENTURE SOLUTIONS

PRIVATE LTD., ACCENTURE STATE HEALTHCARE SERVICES LLC, ACCENTURE

INSURANCE SERVICES LLC, and TEXAS MEDICAID & HEALTHCARE PARTNERSHIP,

("Accenture" or "Defendants") and for cause of action shows unto the Court the following:

## <u>INTRODUCTION</u>

1.      This lawsuit is brought as an individual action by Plaintiff to vindicate her wrongful

discharge, race, disability, national origin discrimination, and retaliation pursuant to the laws

identified herein.

## JURISDICTION AND VENUE

2.      The subject matter in controversy is within the jurisdictional limits of this Court and pursuant to the statutes identified in the causes of action below.  Additionally Plaintiff has timely complied with all conditions precedent related to the administrative procedures outlined in the statutes identified.

3.      Venue in this district is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) because Accenture conducts business in this district.

## PARTIES AND SERVICE

4.      Plaintiff, Grace Nsiah, is an individual who resides in Austin, Texas.

5.      Defendant, Accenture PLC, is public company with limited liability incorporated under Irish law, having its registered office at 1 Grand Canal Square, Grand Canal Harbour, Dublin 2, D02 P820, Ireland. Accenture PLC provides consulting, technology, strategy, digital, and operations services to clients located worldwide and is a Fortune Global 500 company. Accenture PLC maintains approximately 48 offices in the United States and employs about 51,800 employees locally. Accenture PLC has continuous and systematic contacts with the state of Texas sufficient to establish general jurisdiction over said Defendant. Accenture PLC owns and operates a number of subsidiaries registered in Texas, including but not limited to Accenture LLP, Accenture Solutions Private Ltd., Accenture State Healthcare Services LLC, Accenture Insurance Services LLC, and Texas Medicaid & Healthcare Partnership.

6.      Defendant, Accenture LLP, is a foreign limited liability partnership and wholly-owned subsidiary of Accenture PLC, may be served with process by serving its registered agent Corporate Creations Network Inc. at 5444 Westheimer #1000, Houston, Texas 77056.

7.      Defendant, Accenture Inc., is a foreign corporation and wholly-owned subsidiary

of Accenture PLC and a partner of Accenture LLP, and has continuous and systematic contacts with the state of Texas sufficient to establish general jurisdiction over said Defendant. This Defendant may be served with process by serving the secretary of state of Texas.

8.     Defendant, Accenture LLC, is a foreign limited liability company and wholly-owned subsidiary of Accenture PLC and a partner of Accenture LLP, and has continuous and systematic contacts with the state of Texas sufficient to establish general jurisdiction over said Defendant. This Defendant may be served with process by serving the secretary of state of Texas.

9.     Defendant, Accenture Solutions Private Ltd., is a foreign corporation and wholly-owned subsidiary of Accenture PLC, and may be served with process by serving its registered agent Corporate Creations Network Inc. at 5444 Westheimer #1000, Houston, Texas 77056.

10.     Defendant, Accenture State Healthcare Services LLC, is a foreign limited liability company and wholly-owned subsidiary of Accenture PLC, and may be served with process by serving its registered agent Corporate Creations Network Inc. at 5444 Westheimer #1000, Houston, Texas 77056.

11.     Defendant, Accenture Insurance Services LLC, is a foreign limited liability company and wholly-owned subsidiary of Accenture PLC, and may be served with process by serving its registered agent Corporate Creations Network Inc. at 5444 Westheimer #1000, Houston, Texas 77056.

12.     Defendant, Texas Medicaid & Healthcare Partnership, is a partnership between the State of Texas and Accenture. Accenture is the claims administrator for Texas Medicaid on behalf of a government contract with the Texas Health and Human Services Commission, and may be served with process by serving Accenture's registered agent Corporate Creations Network Inc. at 5444 Westheimer #1000, Houston, Texas 77056.

## NATURE OF ACTION

13.     This is an action under Title VII of the civil Righst avt of 1964 as amended 42 U.S.C. Section 2000e et. seq. and 42 U.S.C. Section 1981 as amended by the Civil Rights Act of 1991 and the Texas Labor Code Section 21 to correct unlawful employment practices on the basis of race, national origin, disability discrimination, and retaliation.

## FACTS

14.     Plaintiff is a black female who was born in Ghana, Africa. Plaintiff lived in Ghana until she was six years old. Plaintiff and her parents moved to Sovizzo, Italy when Plaintiff was six years old. Plaintiff went to grade school in Sovizzo, Italy and part of middle school.

15.     Plaintiff and her siblings then moved to Woodbridge, Virginia. Plaintiff attended Nova Community College in Woodbridge, Virginia. After school, she continued to work in Woodbridge, Virginia until she moved to Austin, Texas in 2015.

16.     During 2016, Plaintiff was hired by Accenture. She was initially hired as a clerk and was then promoted as a Tort Analyst at the Austin, Texas location. Plaintiff was assigned as the "queue" supervisor.

### ACCENTURE

17.     Accenture is a global management consulting, technology services and outsourcing company, with approximately 293,000 people serving clients in more than 120 countries. The Texas Health and Human Services Commission selected Accenture to serve as the lead Medicaid vendor in Texas. The company has more than 5,500 Texas employees including more than 1,100 in Austin. An Accenture Delivery Center, which opened in Austin in March 2013, has more than 300 employees, and designs and builds software for state health and human service agencies across the country. Accenture worked closely with the Texas Health and Human Services to transition

and mobilize people, processes, technology and facilities in preparation for managing operations of the Texas Medicaid & Healthcare Partnership.

18.     Since 2004, Accenture has served as the largest subcontractor on Texas Medicaid, responsible for data center operations, technology hardware, network operations and more than 100 software applications. The overall project, known as the Texas Medicaid Healthcare Partnership (TMHP), supports 3.6 million Medicaid recipients and 45,000 healthcare providers through processing more than 12.5 million Medicaid claims monthly, maintaining data on Medicaid managed care transactions, and responding to Medicaid provider and client inquiries through a variety of channels.  TMHP carries out the Medicaid claims payment for the state of Texas under contract with the Texas Health and Human Services Commission and administers third party liability cases to reduce Medicaid costs by shifting claims expenses to third party payers. Acting on behalf of the Texas Health and Human Services Commission, TMHP has specific rights of recovery from any settlement, court judgment, or other resources awarded to a client with Medicaid coverage. TMHP works directly with the attorneys, courts, and insurance companies to seek reimbursement for Medicaid payments. If a provider receives a portion of settlement for services also paid by Medicaid, the provider must make a refund to TMHP.

19.     Some of Plaintiff's duties at Accenture are as follows: Plaintiff performed post-payment investigations of potential casualty and liability cases to ensure that Texas Medicaid is the payer of last resort, and identified and recovered Medicaid expenditures in casualty cases involving Medicaid clients. She gathered information from attorneys representing a Medicaid client in a third party claim or action for damages to recover payments from third parties that are responsible for paying towards a medical claim for services rendered to a Texas Medicaid client. Additionally, she monitored all accident claims to determine whether another resource may be

liable for the medical expenses of clients with Medicaid coverage. She processed the liability-related claim and pursued reimbursement directly from the potentially liable party on a post-payment basis. She supervised the "queue" for half the day and made sure all calls were returned within an hour.

**PLAINTIFF'S DISABILITY**

20.     On or about April 2017, Plaintiff was diagnosed with Major Depressive Disorder, a disability covered by the Americans with Disabilities Act and the Texas Labor Code, and received treatment for her disability. Major Depressive Disorder can be debilitating and interfere with an individual's ability to work or interact socially with others. Symptoms of Major Depressive Disorder include, but not limited to, fatigue and apathy, lack of sleep, an inability to concentrate, constant sadness, irritability, and feelings of worthlessness.

21.     On or about April 2017, Plaintiff requested an accommodation due to her disability. In this regard, she asked supervisor, Paula Mendoza if she could take two weeks off while she was seeking medical treatment. Plaintiff was having difficulties concentrating and suffering from panic attacks, depression and anxiety.

22.     Paula Mendoza did not refer Plaintiff to Human Resources. Ms. Mendoza appeared to be sympathetic at first; however, she launched into an inappropriate castigation of Plaintiff shortly after Plaintiff had just revealed her most vulnerable and debilitating personal information about her mental health. In this regard, Ms. Mendoza, shockingly, was disapproving of Plaintiff's desire to see a doctor.  Ms. Mendoza stated: "I'm going to take my white hat off" and stated that Plaintiff "could be cured from her condition if she went to church," or words to that effect. Plaintiff was offended, shocked, and stunned by her supervisor's rude insensitivity and disbelief of her existing psychological medical condition, or that she needed medical assistance. Plaintiff pleaded

and begged for relief. Ultimately, Paula Mendoza approved a two-month leave for Plaintiff to receive treatment. Plaintiff sees a psychologist and therapist in Austin, Texas for her disability.

23.    As stated, Accenture was aware of Plaintiff's disability. Based upon Plaintiff's doctor's orders, Defendant extended Plaintiff two months of leave in April 2017 and provided her with short-term disability pay until she returned to work at the end of June 2017.

24.    Upon her return during June of 2017, Plaintiff informed her immediate supervisor, Rachel Kruse, that she wanted to register for a suicide awareness class offered by Accenture to its employees. Plaintiff explained that volunteering for the class would benefit her mental health. Plaintiff's physician had encouraged her to be more involved with others and help other and that she be of service to others. After this request, Rachel Kruse started treating Plaintiff differently to the point where Plaintiff was not comfortable discussing any aspect of her disability to any other supervisor and employee. It was at this time when Plaintiff's former supervisor that transferred to another department within the company, Michael Vargas, approached Plaintiff and advised her to watch a controversial Netflix series about teen suicide. Afterwards, due to this gossip in the office, Plaintiff felt anxious, and it aggravated  her medical condition.

25.    Other examples of Plaintiff being treated inappropriately due to her disability are: she was being isolated and accused of conduct such as being loud when in fact she was conducting herself as she always done at Accenture. Plaintiff was told by her supervisors that she couldn't help any new hires because "she couldn't help new people" "due to her depression" and "that it caused her to be unable to help other people" or words to that effect.  Plaintiff felt like she was treated as someone with a contagious disease and was discriminated against due to her mental health issue.

26.    Another shocking example of how Plaintiff was treated differently due to her

disability was the constant harassment over how well dressed she was. Part of Plaintiff's mental health recovery involved her actively engaging in positive activities and exercising and dressing well. This was based upon her treatment. Plaintiff was constantly being called in the supervisors' office because of Plaintiff's alleged failure to adhere to Accenture's business "casual" dress code. In a hideous turn of events, Plaintiff was admonished because she was "too dressy" and she should be "more casual." Plaintiff always dressed nice and professionally. Furthermore, Plaintiff's therapist told her to be proud of who she is and where she came from, and to dress up and take pride in her appearance. Plaintiff's therapist wanted to help build her confidence from the inside and out as a form of long-term treatment. Plaintiff has a nice wardrobe and has dresses that are green, yellow, and red because those are the colors of the flag of Ghana. She wore knee-length dresses and did not expose her shoulders and chest. Plaintiff never had issues in the past with the dress code policy and was often complimented by her coworkers. Plaintiff was singled out by her supervisors. Other workers, men and women, were allowed to "dress nicely" and they were not disabled nor were they African. They were not disciplined for dressing nicely.

27.     On or about May 14, 2018, Plaintiff was pulled to a different room by supervisor, Rachel Kruse to counsel Plaintiff on the clothes she was wearing that day. Plaintiff was wearing a green knee-length dress and a sweater over the dress. Rachel Kruse told Plaintiff that her outfit was a violation of the dress code because it was "too dressy" and demanded that Plaintiff leave the office and change her clothes at home. Plaintiff was upset that she was asked to leave because her outfit was appropriate and did not violate the dress code. Rachel Kruse then started screaming at Plaintiff to leave the office and threatened to call security if she didn't leave as if she was a criminal. Plaintiff was humiliated. Plaintiff had an anxiety attack. As Plaintiff was leaving the office, she told her supervisor, Mary Kay Stewart, "I hope you're happy because you're always

trying to get me in trouble." After getting kicked out of office, Plaintiff went home to change into jeans and top and returned back to work. Plaintiff was able to finish her work for the day. No other workers who dressed nicely were asked to endure this treatment. The other workers were not disabled.

28.     On or about May 16, 2018, supervisor, Paula Mendoza counseled Plaintiff for alleged dress code violations. Paula Mendoza apologized to Plaintiff for getting sent home by Rachel Kruse and Mary Kay Stewart because Plaintiff was only supposed to get a warning.

29.     On or about May 24, 2018, supervisor, Rachel Kruse again pulled Plaintiff into a different room to discuss the dress code and scolded Plaintiff for her May 14 comment to Mary Kay Stewart after Plaintiff was kicked out of the office. Plaintiff dressed appropriately for work and was not in violation of the dress code. Plaintiff's coworker, Lindsey Sherill (a white female Anglo) dressed nicely and similar to Plaintiff; however, Ms. Sherill wore shorter dresses that showed cleavage and exposed her shoulders. Lindsey Sherill never got in trouble for violating the dress code and was never forced to leave the office to change her clothes. Ms. Sherrill is not disabled. Plaintiff's coworker, Clarissa Vasquez (a white Hispanic female) also dressed nice and similar to Plaintiff and never got in trouble for violating the dress code. Ms. Vasquez was never forced to leave the office to change her clothes. Ms. Vasquez is not disabled.

30.     Due to this constant harassment, on or about October 11, 2018, Plaintiff suffered from several panic attacks as a result of her disability and had difficulty going to work in the morning. Plaintiff contacted her mentor, Nidia Ramirez, about her panic attacks and allowed Plaintiff to come into work late that morning. Upon arriving to work, Plaintiff contacted her immediate supervisor, Mary Kay Stewart, and advised her that she was not feeling well due to her panic attacks. Plaintiff did not want to go home and requested a reasonable accommodation to

allow her to not take calls that day.  Mary Kay Stewart rejected Plaintiff's accommodation request and instead allowed Plaintiff to take a short break and report back to her at noon. Plaintiff was still suffering from a panic attack at noon and again requested an accommodation. Mary Kay Stewart stated she would excuse Plaintiff from taking calls that day only if she had a "Doctor's Note." Plaintiff reminded Ms. Stewart that she had previously accommodated her coworker, Lindsey Sherill (a white female Anglo) when asked to be excused from taking calls without a "Doctor's Note."

31.     Plaintiff was then called into supervisor, Rachel Kruse's office along with Mary Kay Stewart. Rachel Kruse reiterated that Plaintiff needed to have a "Doctor's Note" to be excused from taking calls. Plaintiff, again, reminded both Ms. Kruse and Ms. Stewart of accommodating Lindsey Sherill's similar request without a "Doctor's Note." Ms. Kruse threatened Plaintiff that she was going to call the Human Resources Manager, Gregory Hunt.

32.     Plaintiff then asked Lindsey Sherill to come into the office and Ms. Sherill confirmed to Ms. Kruse and Ms. Stewart that she was, in fact, accommodated without a "Doctor's Note" and wasn't required to take calls all day. At that time, Plaintiff was not required to take calls for the remainder of the day. However, Ms. Kruse advised Plaintiff to make sure she had a "Doctor's Note" regarding such request next time.  The "Doctor's Note" policy has never been enforced with other employees.

33.     Towards the end of the work-day on or about October 11, 2018, Rachel Kruse's supervisor, Paula Mendoza, called Plaintiff into an office along with HR Manager Gregory Hunt. Plaintiff was discharged effective immediately by Accenture. No reason was given for Plaintiff's discharge. All of the calls were answered that day by clerks and Plaintiff completed her work for the day. Plaintiff believes that she was discriminated against because of her race, national origin,

and her disabilities.

34.    As stated above, Defendant was aware that Plaintiff suffered from Major Depressive Disorder. Plaintiff was discharged from her employment the same day that she requested a reasonable accommodation. This was the first time that Plaintiff ever asked Accenture for an accommodation since she returned from medical leave due to her disability. Plaintiff never received any write-ups for neither performance issues nor dress code violations. Her colorful dresses were always appropriate at work. Plaintiff was put in a situation by Accenture where she could not succeed because of the mistreatment and discrimination due to a psychological disability that is out of her control. Plaintiff attempted to overcome her disability and build her confidence by dressing up and taking pride in her appearance while also embracing her differences and brightening up her world with beautiful clothes that represent the colors of the flag of the country of her birth. Defendants consistently kicked Plaintiff while she was down like bullies in a schoolyard. When Plaintiff reacted out of frustration, confusion, anxiety, and pain from the accusations and treatment by her supervisors, Accenture immediately labeled her reactions as insubordinate behavior. Plaintiff enjoyed her job, she was always on time to work, and she always got her work done in a timely manner despite being harassed by her supervisors.

35.    On or about April 23, 2019, Plaintiff filed a charge of discrimination with the Austin Field Office of the U.S. Equal Employment Opportunity Commission, alleging that Plaintiff was being discriminated against because of her race, national origin, and disability.

36.    On or about May 1, 2019, Plaintiff filed a charge of discrimination with the Austin Field Office of the U.S. Equal Employment Opportunity Commission, alleging that Plaintiff was being discriminated against because of her race, national origin, disability, and retaliation.  A dismissal and Notice of Rights was mailed on October 22, 2019, However it was received after

that date.

## CAUSES OF ACTION

## COUNT I

### Discrimination – Race
### Violation of Title VII of The Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq as amended,
### and Tex. Lab. Code §§ 21. 001, *et. seq.*

37.     Plaintiff incorporates by reference the facts and allegations contained in the previous paragraphs as if set forth verbatim.

38.     Plaintiff, African American, was singled out and discriminated against due to her race, black, African American. Plaintiff was harassed, retaliated against, and discriminated against due to her race, black, national origin, African, and her  disability.

39.     Defendant, Accenture, by and through Defendant's agents, engaged in unlawful employment practices involving Plaintiff because of her race.

40.     The employment practices of Defendant, Accenture, by and through Defendant's agents, specifically Rachel Kruse, Mary Kay Stewart, and Paula Mendoza, had a disparate and adverse impact on Plaintiff because of her race.  Such employment practices were not job-related and were not consistent with business necessity.

## COUNT II

### Discrimination – Race
### Violation of 42 U.S.C. Section 1981 et seq

41.     Plaintiff incorporates by reference the facts and allegations contained in the previous paragraphs as if set forth verbatim.

42.     Plaintiff, African American, was singled out and discriminated against due to her race, black, African American. Plaintiff was harassed, retaliated against, and discriminated against

due to her race, black, national origin, African, and her disability.

43.    Defendant, Accenture, by and through Defendant's agents, discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status because of Plaintiff's race in violation of 42 U.S.C. Section 2000e-(2)(a) and 42 U.S.C. Section 1981.

44.    Defendant, Accenture, by and through Defendant's agents, classified Plaintiff in a manner that deprived her of an equal employment opportunity that was provided to employees similarly situated in violation of 42 U.S.C. Section 2000e-(2)(a) and 42 U.S.C. Section 1981.

45.    Plaintiff alleges that Defendant, Accenture, by and through Defendant's agents, discriminated against Plaintiff on the basis of race with malice or with reckless indifference to the state-protected rights of Plaintiff.

## COUNT III

### Discrimination – National Origin
### Violation of Title VII of The Civil Rights Act of 1964, 42 U.S.C. Section 2000e et esq as amended,
### and Tex. Lab. Code §§ 21.110 *et. seg.*

46.    Plaintiff incorporates by reference the facts and allegations contained in the previous paragraphs as if set forth verbatim.

47.    Plaintiff, African American, was singled out and discriminated against due to her race, black, African American. Plaintiff was harassed, retaliated against, and discriminated against due to her race, black, national origin, African, and her disability.

48.    Defendant, Accenture, by and through Defendant's agents, engaged in unlawful employment practices involving Plaintiff because of her national origin.

49.    The employment practices of Defendant, Accenture, by and through Defendant's

agents, specifically Rachel Kruse, Mary Kay Stewart, and Paula Mendoza, had a disparate and adverse impact on Plaintiff because of her national origin.  Such employment practices were not job-related and were not consistent with business necessity.

## COUNT IV

### Discrimination – National Origin
### Violation of 42 U.S.C. Section 1981 et seq

50.     Plaintiff incorporates by reference the facts and allegations contained in the previous paragraphs as if set forth verbatim.

51.     Plaintiff, African American, was singled out and discriminated against due to her race, black, African American. Plaintiff was harassed, retaliated against, and discriminated against due to her race, black, national origin, African, and her  disability.

52.     Defendant, Accenture, by and through Defendant's agents, discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status because of Plaintiff's national origin in violation of 42 U.S.C. Section 2000e-(2)(a) and 42 U.S.C. Section 1981.

53.     Defendant, Accenture, by and through Defendant's agents, classified Plaintiff in a manner that deprived her of an equal employment opportunity that was provided to employees similarly situated in violation of 42 U.S.C. Section 2000e-(2)(a) and 42 U.S.C. Section 1981.

54.     Plaintiff alleges that Defendant, Accenture, by and through Defendant's agents, discriminated against Plaintiff on the basis of national origin with malice or with reckless indifference to the state-protected rights of Plaintiff.

## COUNT V

### Discrimination – Disability
### Violation of The Americans With Disabilities Act ("ADA") 42 U.S.C. § 12101 *et. seq.*, "Regarded or Perceived as Disabled," and "failure to accommodate" and Tex. Lab. Code § 21.051 *et. seq.*

55.     Plaintiff incorporates by reference the facts and allegations contained in the previous paragraphs as if set forth verbatim.

56.     Plaintiff, African American, was singled out and discriminated against due to her race, black, African American. Plaintiff was harassed, retaliated against, and discriminated against due to her race, black, national origin, African, and her disability.

57.     Defendant, Accenture, by and through Defendant's agents, intentionally engaged in unlawful employment practices involving Plaintiff because of her disability. At all material times, Defendant was aware of her disability and/or regarded or perceived her as disabled.

58.     Defendant, Accenture, by and through Defendant's agents, intentionally discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status because of Plaintiff's disability in violation of the Texas Labor Code.

59.     Defendant, Accenture, by and through Defendant's agents, intentionally classified Plaintiff in a manner that deprived her of an equal employment opportunity that was provided to other non-disabled employees similarly situated in violation of the Texas Labor Code.

60.     At all times material hereto, Plaintiff was able to perform the essential functions of her position with her accommodation. Plaintiff was discriminated against on the basis of her disability and her request for accommodations.

61.     Plaintiff alleges that Defendant, Accenture, by and through Defendant's agents, discriminated against Plaintiff on the basis of disability with malice or with reckless indifference to the state-protected rights of Plaintiff.

## COUNT VI

**Retaliation**
**Violation of :**

**The Americans With Disabilities Act ("ADA") 42 U.S.C. § 12101 *et. seq.*,**
**42 U.S.C. Section 1981 et seq**
**Title VII of The Civil Rights Act of 1964, 42 U.S.C. Section 2000e et esq as amended, and**
**Tex. Lab. Code § 21.051 *et. seq.*, and Tex. Lab. Code §§ 21.055 *et. seq.***

62.     Plaintiff incorporates by reference the facts and allegations contained in the previous paragraphs as if set forth verbatim.

63.      Plaintiff, African American, was singled out and discriminated against due to her race, black, African American. Plaintiff was harassed, retaliated against, and discriminated against due to her race, black, national origin, African, and her disability.

64.     Plaintiff alleges that Defendant, Accenture, instituted a campaign of retaliation. This retaliation was and is due to Plaintiff exercising her rights by opposing a discriminatory practice, making or filing a charge, filing a complaint, and testifying, assisting, or participating in an investigation or proceeding regarding an unlawful discriminatory practice.

65.     Defendant, Accenture, committed unlawful employment practices against Plaintiff because Plaintiff engaged in activity protected under the Texas Labor Code.

66.     The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities, and otherwise adversely affect her status as an employee, because of her engagement in a protected activity.

67.     Plaintiff would show that the retaliatory actions taken against her were motivated by Plaintiff's request for a reasonable accommodation.

68.     Plaintiff alleges that the retaliation was committed with malice or with reckless indifference to the state-protected rights of Plaintiff.

69.     Plaintiff suffered damages for which Plaintiff herein sues.

## DAMAGES

70.     Defendant's wrongful acts were a proximate cause of serious damage and injury to Plaintiff. Plaintiff seeks damages within the jurisdictional limits of the Court.

## DEMAND FOR JURY TRIAL

71.     Plaintiff hereby demands a trial by jury and tenders the jury fee.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Grace Nsiah, prays that Defendant, Accenture, be cited to appear and answer, and that upon a final judgment, Plaintiff, Grace Nsiah, have the following:

(A)     judgment against Defendant for damages, jointly and severely in a sum exceeding the minimum jurisdictional limits of the Court, representing wage payments, vacation pay, bonuses, overtime, health care benefits, inconvenience, loss of enjoyment of life, other non-pecuniary losses, and all of the compensation due to Plaintiff that accrued at the time of the filing of this Petition, plus interest at the legal rate from the date each payment became due until the date of judgment;

(B)     a judgment sum representing wages payments, vacation pay, bonuses, overtime pay, health care benefits, inconvenience, loss of enjoyment of life, other non-pecuniary  losses, and all other compensation due Plaintiff that accrued from the date of the filing of this Petition to the date of judgment, plus interest from the date each payment becomes due until the date of judgment;

(C)     a further sum representing the present value of unaccrued wage payments, vacation pay, bonuses, health care benefits, inconvenience, loss of enjoyment of life, other nonpecuniary losses, and all other compensation due to Plaintiff for the period following the date of judgment, calculated as of the date of judgment for the losses that Plaintiff has to sustain in the future;

(D)     liquidated damages as provided by law;

(E)     an award of compensatory, exemplary and punitive damages against Defendant within the jurisdictional limits of this Court as may be determined by the trier of fact;

(F)     pre-and post–judgment interest at the legal rate until paid;

(G)     Attorney's fees and expenses;

(H)     costs of court; and

(I)     for such other and further relief to which Plaintiff may show herself justly entitled.


Respectfully submitted,


By:        /s/ *Glenn D. Levy*
Glenn D. Levy
Texas Bar No. 12264925
906 West Basse Road, Suite 100
San Antonio, Texas  78212
Telephone:     (210) 822-5666
Facsimile:     (210) 822-5650

**ATTORNEY FOR PLAINTIFF**